# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

TERRA SOLKEY,

        Plaintiff,

v.

FEDERAL WAY SCHOOL DISTRICT, et al.,

        Defendants.

Case No. C08-0438 MJP

ORDER GRANTING SUMMARY JUDGMENT

     This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 35.) The Court has considered the motion, the response (Dkt. No. 47-2), the reply (Dkt. No. 63), the documents submitted in support thereof, and the parties' presentations at oral argument on May 19, 2009. For the reasons set forth below, the Court GRANTS Defendants' motion.

## Background

     Plaintiff Terra Solkey complains she was improperly fired from her position as Head Coach of the Girls' Basketball team at Sequoyah Middle School ("Sequoyah") in the Federal Way School District (the "District"). (Dkt. No. 47-2 at 1.) During the 2005-2006 term, which was the first year Sequoyah operated, Solkey taught math and science and coached four sports. (Solkey Decl. ¶ 35.) Prior to moving to Sequoyah, Solkey taught and coached junior varsity basketball and gymnastics at Totem Middle School. (Id.)

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 1

Principal Mark Demick decided to re-open hiring for all coaching positions for the 2006-2007 school year to pursue applications from a larger pool of potential coaches. (Demick Decl. ¶ 6.) Assistant Principal Patty Elmer developed the procedure where coaches applied online and finalists received interviews. (Elmer Decl. ¶ 3.) Two candidates were selected for an interview: Solkey and her successor, David Abrahamson. Athletic Director Terry Lathan and Dean of Students Alex Clausen interviewed both candidates, presented their recommendation to Elmer and either Demick or Elmer hired Abrahamson. (Lathan Decl. ¶ 10; Elmer Decl. ¶ 6; Ferguson Decl., Ex. A at 9.)

Upon hearing she was not selected on November 1, 2006, Solkey met with Elmer to inquire about the decision. Elmer claims she re-reviewed the applications, including Lathan and Clausen's written notes, and concluded that Abrahamson was more qualified. (Elmer Decl. ¶ 10.) Solkey eventually sent a written complaint to Superintendent Tom Murphy, who referred the matter to Director of Employee Relations Marion Leach. (Leach Decl., Ex. A.) After meeting with Solkey and Julia Nelson, Leach recommended the District retain an outside investigator. After the investigator found that the decisions to re-post the coaching position and hire Abrahamson were not gender-based, Murphy wrote Solkey denying her discrimination complaint. (Leach. Decl. ¶ 6, Ex. C.) Solkey filed a Title VII complaint with the EEOC, which was dismissed. (Id., Ex. E.)

Before she was not retained as basketball head coach, Plaintiff claims to have complained about gender inequity in the treatment student-athletes. (Solkey Decl. ¶ 2.) Solkey emailed Lathan and Demick on March 24, 2006, concerned that a male athlete was allowed to play despite having a failing grade in her class. (Id., Ex. K (Dkt. No. 45-10) at 7 ("If this is a new rule we need to make sure that all teams are treated equably [sic]…").) A few days later, she

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 2

repeated her concern in another email to Demick. (Id. at 8 ("I . . . don't want any discrepancy from boys to girls [sic] sports.").) The Court's review of the record has not revealed evidence indicating that Solkey complained about funding disparities before losing her position. Solkey states she "noticed inequity in funding issues" but does not describe informing anyone at Sequoyah about the concerns. (See id. ¶¶ 55-56.)[1]

After Abrahamson was hired, Plaintiff continued to raise concerns about the grade check policy. In addition to her letter to Murphy, Plaintiff sent at least two emails after losing her coaching position. (Solkey Decl., Ex. K.) Solkey encouraged the District's Athletic Director Mark Davidson to "really be aware of the inconsistencies in equity we have here at Sequoyah in all areas," though it is not clear from the face of her email that the inequity at issue was gender-related. (Id. at 12.) Another email to the District's Equity and Achievement officer raised concerns about racial inequity in grade enforcement. (Id., Ex. N. (Dkt. No. 45-12) at 6.) Solkey also complained that Lathan had a conflict of interest because the man he originally wanted to hire for the 2005-2006 Girls' Basketball team, Tony Schoeller, operated a business that profited from sales to the District. (Id. ¶ 3.) Plaintiff claims these complaints lead to negative performance evaluations and the school's decision to propose placing her in an "alternative learning space or cart" for the 2007-2008 school year. (Id., Ex. F.) The written evaluations submitted indicate Solkey received favorable reviews from Demick and Elmer—she received the highest possible rank on each form submitted. (Id., Ex. P ("meeting standings" in all categories).) The school's plan to resort to alternative classroom assignments never materialized.

---

[1] Plaintiff's claim she "challenged unequal treatment in this regard on a number of occasions and with a number of different people" is not helpful in identifying specific protected speech. (Solkey Decl. ¶ 62.)

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 3

(Demick Decl. ¶ 13.) Plaintiff left the District at the end of the 2006-2007 school year to teach in the Renton School District. (Solkey Decl. ¶ 27.)

Plaintiff's complaint asserted six causes of action: (1) a 42 U.S.C. § 1983 claim for violation of constitutional rights (Compl. ¶¶ 5.1-5.12); (2) a federal claim for retaliation in violation of Title IX (¶¶ 6.1-6.4); (3) a state law claim for sex discrimination, retaliation, and a hostile work environment (¶¶ 7.1-7.6); (4) wrongful termination in violation of public policy (¶¶ 8.1-8.6); (5) defamation (¶¶ 9.1-9.4); and (6) a state claim for negligent hiring, supervision, and retention (¶¶ 10.1-10.2). Plaintiff has withdrawn her claim of defamation. (Dkt. No. 47-2 at 1.) At oral argument counsel conceded that, by failing to provide any response to Defendants' negligent supervision argument, Plaintiff had implicitly dropped the claim.

## Discussion

I. Motions to Strike

Defendants move to strike a number of Plaintiff's filings because they were filed late and in an improper format.[2] (Dkt. No. 63 at 2-3.) Counsel's declaration describing the circumstances of the untimely filings does not explain why the response submitted appears to be in draft form. (See, e.g., Dkt. No. 44 at 29 ("See Exh. * and Dec. of Solkey at *. *what else she did Sandra?").) For the purposes of this motion, the Court has considered Plaintiff's response as it appears in the errata brief. (Dkt. No. 47-2.)

Rule 56(e)(1) provides that affidavits filed in opposition to summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1); see also Columbia Pictures Industries, Inc. v. Professional Real Estate Investors,

---

[2] Defendants also complain about the length of the response brief. (Dkt. No. 63 at 2.) To the extent the response is over-length, the Court allows it because Defendants' brief uses extensive footnoting that, if included the text, would also create an over-length filing. (See Dkt. No. 35.)

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 4

Inc., 944 F.2d 1525, 1529 (9th Cir. 1991) (declaration that was "not based on personal knowledge, but on information and belief" insufficient to raise an issue of fact). Even under the standard where courts "treat the opposing party's papers more indulgently than the moving party's papers" when examining Rule 56(e)'s requirements, several of Plaintiff's submissions fall short of the mark. Lew v. Kona Hosp.,754 F.2d 1420, 1423 (9th Cir. 1985).

The Court believes it is appropriate to strike those sections of the affidavits where it is impossible to determine the declarant's personal knowledge either from the face of the statement or the context of the factual claim. See 11 Moore's Federal Practice § 56.14[1][c] (collecting cases). The Court strikes the following statements in Solkey's declaration that fall short of the standard set forth in Rule 56(e)(1): ¶ 2 (ascribing illegal motive to Lathan); ¶ 7 ("I guess that would make the provisions of the CBA District policy . . ."); ¶ 10 ("I believe the entire process . . . was all a sham . . ."); ¶ 12 (belief related to coach retention); ¶ 13 ("I don't believe he even re-applied . . ."); ¶ 16 ("I believed the administrators who are now the defendants in this lawsuit would act with integrity. Was I ever wrong!"); ¶ 18 ("No schools placed teachers on carts . . ."); ¶ 19 ("Ms. Elmer's declaration . . . is most likely false."); ¶ 20 ("They would not have expressed a preference . . ."); ¶ 27 ("I believe I was not hired for that position because . . ."); ¶ 41 ("It was my understanding that there had been parental or student complaints . . . we don't know for sure what the reason really was . . ."); ¶ 44 ("It was widely assumed by employees of the District . . ."); ¶ 49 ("If I am right about . . ."); ¶ 57 ("I believe Lisa Knapp and I were both associated by A.D. Lathan with Lisa's protests . . ."); ¶ 72 ("I believe that Lisa probably told Lance Andree . . . so that she could stay on Mr. Lathan's good side."); ¶ 83 (as to what Elmer assumed); ¶ 87 (assumptions about the restrictions placed on Abrahamson, speculation as to what Abrahamson would have said); ¶ 97 (attacking veracity of Elmer's declaration); ¶ 101 (ascribing District's

motive; "This is a very convenient lie."); ¶ 102 ("Since her alibi had a big hole in it, she thought up something new . . ."); ¶ 106 (describing Lathan's motive); ¶ 110 ("In his deposition, Mr. Demick lied . . ."); ¶ 111 ("nobody . . . did anything to investigate in good faith"); ¶ 118 ("I believe that Mr. Lathan did not follow the procedure because he knew . . ."). The Court has not considered these portions of Solkey's declaration when reaching its ruling on Defendants' motion for summary judgment.

II.  Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

ORDER ON MOTION FOR SUMMARY JUDGMENT- 6

III.   § 1983 Claims

Plaintiff asserts a § 1983 claim against the District and the named Defendants in their official and personal capacities. (Compl. ¶¶ 5.1-5.12.) Plaintiff's complaint alleges violations of Solkey's due process and free speech rights. (Id. ¶¶ 5.2-5.3.)

   a. Due Process

To determine whether a material issue of fact exists on Plaintiff's due process claim, this Court first asks "whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977); see also Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) (further noting property interests do not stem from the U.S. Constitution, but from "an independent source such as state law."). Plaintiff simply does not respond to Defendants' argument that there is no property interest to the renewal of a one-year coaching contract under Washington law. (Dkt. No. 35 at 11-12.)

The Washington Supreme Court has recognized that a property interest may be created by contract, "a mutually explicit understanding, or by substantive procedural restrictions on the part of the decision maker." Conrad v. University of Washington, 119 Wn.2d 519, 530 (1992). The terms of Solkey's contract expressly provided that the contract was not subject to renewal. (Lathan Decl., Ex. B.)  The only evidence offered by Plaintiff that can be construed to support a claim of a mutual understanding is her statement that coaching positions were renewed as a matter of practice throughout the District. (Solkey Decl. ¶ 8). Plaintiff's subjective belief is insufficient to create a material issue of fact on this issue. See Roth, 408 U.S. at 577 (rejecting a plaintiff's "unilateral" expectation). Finally, Plaintiff points to no substantive procedures that provided "specific directives" to the individuals responsible for hiring coaches in Federal Way.

ORDER ON MOTION FOR SUMMARY JUDGMENT- 7

Conrad, 119 Wn.2d at 536 (quoting Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 462-63 (1989)). Plaintiff's due process claim thus fails as a matter of law.

   b. Gender Discrimination

It is not clear from the face of Plaintiff's complaint or response that she has plead a claim of gender discrimination, but counsel's presentation at oral argument indicated this was a basis for the § 1983 claim. Assuming such a claim exists, it is governed by the burden shifting analysis presented in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). First, Solkey must show (1) that she is a member of a protected class; (2) that she performed her job satisfactorily; (3) that she suffered an "adverse employment action;" and, (4) that she was treated less favorably than a similarly situated employee from an unprotected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (race discrimination case). Once Plaintiff alleges a prima facie case, the burden shifts to Defendants to respond with a legitimate, non-discriminatory reason for their actions. Cornwell, 439 F.3d at 1029. If Defendants respond with admissible evidence demonstrating a non-discriminatory reason, Plaintiff may survive summary judgment by "satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)." Id.; see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) (the presumption "drops out of the picture" once defendant responds with a nondiscriminatory motive). Because Washington's Law Against Discrimination ("WLAD") tracks federal discrimination law, a plaintiff's federal and state discrimination claims may be analyzed together. Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002).

Assuming Solkey could establish a prima facie case, Defendants have presented a non-discriminatory reason for re-opening the position: they wanted to draw applications from a larger

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 8

pool of potential coaches. (Demick Decl. ¶ 6.) Plaintiff's respond that Solkey was the only coach who was not re-hired, but do not cite any facts in support of this assertion. (See Dkt. No. 47-2 at 7.) Elmer's supplemental declaration indicates there were several coaches who were not re-hired. (Supp. Elmer Decl. ¶¶ 5-6.) Plaintiff has not presented facts from which a trier of fact could infer that the non-discriminatory reason was mere pretext. To the extent Plaintiff's § 1983 claim is one for gender discrimination, Plaintiff has failed to create an issue of material fact in responding to Defendants' claimed non-discriminatory purpose.

      c. First Amendment

Plaintiff's First Amendment claim requires her to demonstrate: "(1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (citations omitted). Because WLAD tracks federal retaliation law, a plaintiff's federal and state retaliation claims may be analyzed together. Estevez v. Faculty Club of Univ. of Wash., 129 Wn. App. 774, 797 (2005). Once the prima facie case is presented, the McDonnell Douglas framework outlined above applies. 411 U.S. at 802.

Plaintiff's response offers vague statements about the importance of the First Amendment, without specifying the nature of Solkey's § 1983 claim. (Dkt. No. 47-2 at 26-27 ("[t]here can be no doubt of the importance of First Amendment freedoms in the United States…").) At oral argument, Plaintiff suggested that there are two separate schemes of retaliation in violation of her First Amendment rights: one resulting in Plaintiff's loss of the head coaching position and one resulting in the negative evaluations and the loss of her classroom.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 9

For the first retaliatory scheme, the only statements in the record are Plaintiff's emails to Demick and Lathan related to concerns about the grade check policy. (Solkey Decl., Ex. K at 7-8.) Plaintiff offers no evidence suggesting that her complaints about the grade policy was a motivating factor in the decision to re-open the coaching positions or hire Abrahamson. The only evidence in the record on this issue indicates Demick heard Solkey's concerns and coordinated a change in the grade check policy to address any potential inequities. (Demick Decl. ¶ 8; Solkey Decl. ¶ 66.). Thus, Plaintiff has failed to offer any evidence suggesting her complaints about the grade check policies were a "substantial or motivating factor" in Demick's decision to re-open the position or the decision to hire Abrahamson. Coszalter, 320 F.3d at 973.

For the second alleged retaliatory scheme, Plaintiff claims she suffered adverse employment actions related to her classroom assignment and her performance evaluations. (Dkt. No. 47-2 at 16.) An adverse employment action is one that is "materially adverse," which means that it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citations omitted); see also Hill-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002) (uniform inspection was a "mere inconvenience," not an adverse action). In this matter, the adverse classroom assignment never materialized—enrollment at the school did not increase as anticipated and Solkey would not have had to change classroom had she remained at Sequoyah. (Demick Decl. ¶ 13.) Even if the contingency plan had materialized, it is doubtful that a classroom re-assignment that would not alter Solkey's pay, benefits, or position would constitute an adverse action. In any case, because Solkey never actually lost her classroom, Plaintiff suffered no adverse action from Demick's proposal.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 10

Similarly, Defendants' written evaluations and verbal references do not constitute an adverse employment action. The written evaluations Solkey provides are all excellent and cannot be read to imply an adverse employment action. (Solkey Decl., Ex. P.) The purportedly negative verbal references arise in deposition testimony from Dan Haegele and Elmer. (Ferguson Decl., Ex. "4" at 11.) Haegele's statements, however, do not demonstrate knowledge of comments made to Saghalie staff from any of the Defendants. (Id. at 11: 19-21 ("I know that Teague—this is all assumption—I know that Teague is friends with Terry Lathan. And I'm assuming that they talked.")). Elmer's purportedly negative comment referring to Plaintiff's ability to collaborate arose in the context of an overall positive reference. (Elmer Dec. ¶ 17.) Plaintiff offers no evidence contradicting Elmer's statement that the overall recommendation was positive. These statements simply do not rise to the level of an adverse employment action. Burlington N., 548 U.S. at 68.

Plaintiff thus fails to substantiate a prima facie case for her First Amendment claim.

    d. Liability

Even if Plaintiff could create a material issue of fact with respect to any of the three bases of her § 1983 claim, she has not adequately responded to Defendants' claims of immunity.

        i. District's Liability

The District may not be held liable for Plaintiff's alleged injuries under a theory of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). Under Monell a local government entity is liable for § 1983 claims arising out of "the execution of a government's policy or custom." Id. at 694. It is insufficient for a plaintiff "merely to identify conduct properly attributable to the municipality;" rather, the plaintiff must show "though its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of

County Com'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997) (citations omitted) (emphasis in original). Plaintiff does not argue that her termination arose out of an express policy or custom. (Dkt. No. 47-2 at 24-25.) Instead, Plaintiff asserts policymaking authority had been delegated to various tortfeasors or ratified by those with policymaking authority. (Id.)

First, municipality may be liable for constitutional violations "when the person causing the violation has 'final policymaking authority.'" Chrisite v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)); see also Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (municipality not liable for "a single act of non-policymaking employees"). Whether an individual is a policymaker is a question of state law. Pembaur v. City of Cincinnati, 475 U.S. 469, 484 (1986). Final policymaking authority for schools in Washington generally rests with the school district's board of directors. See RCW 28A.320.015 (power of board of directors). Plaintiff cites one District policy which compels the Board to designate an affirmative action compliance officer and orders the Superintendent to develop an affirmative action plan. (Ferguson Decl., Ex. B ("FWPS Human Resources Policy 5010").) Murphy, the Superintendent, received Solkey's complaint after she was terminated, referred the matter to Leach, and affirmed the outside investigator's report. In other words, all the factual links to the policymaker arose after Solkey lost her position as coach. Plaintiff offers no evidence linking Murphy to any purported negative evaluations or a decision to require Plaintiff to rotate classroom. Plaintiff has not pointed to any facts indicating a district policymaker caused her injuries.

Second, a plaintiff may establish municipal liability by demonstrating that "an official policymaker . . . delegated policymaking authority to a subordinate." Hyland v. Wonder, 117

ORDER ON MOTION FOR SUMMARY JUDGMENT- 12

F.3d 405, 414 (9th Cir. 1997). Solkey suggests the "[d]elegation of hiring authority to Demick makes him a policymaker." (Dkt. No. 47-2 at 24.)[3] This conclusion is not at all obvious. If plaintiff's injury is that she was fired from her position as head coach, she offers no evidence that Demick's decision to re-open all coaching decisions was made pursuant to policy or delegation. See Christie, 176 F.3d at 1236 (distinguishing between a policymaker who delegates discretion to act and a delegation of policymaking authority). Similarly, Plaintiff offers no evidence that a policymaker delegated authority to make policy with respect to her evaluations and classroom assignments.

Third, a district may be liable where a policymaker had knowledge of a constitutional violation and ratified the subordinate's decision. Christie, 176 F.3d at 1239 (citations omitted). Courts have been careful to note "that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." Id. (citing Weisbuch v. County of Los Angeles, 119 778, 781 (9th Cir. 1997) ("To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983.").) The facts in the record make plain that Murphy merely agreed with the outside investigator's report and made no comment on the underlying decision to hire Abrahamson. (Leach Decl., Ex. 3.) In the absence of an affirmative approval, the District cannot be held liable. See Christie, 176 F.3d at 1240.

Plaintiff has not carried her burden in creating an issue of material fact as to the District's liability.

---

[3] The Court observes this contradicts Solkey's contention that Lathan "was the person who made the decision to fire" her. (Solkey Decl. ¶ 1.)

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 13

ii. Official Capacity Liability and Individual Capacity Liability

As a preliminary matter, Plaintiff's suit against the individuals in their official capacities is "equivalent to a suit against the entity" and, thus, subject to Court's analysis under Monell. Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff, 533 F.3d 780, 799 (9th Cir. 2008). To determine whether the individual Defendants are entitled to qualified immunity for Plaintiff's personal capacity claims the Court asks whether (1) plaintiff as alleged a violation of a constitutional right and (2) whether "the right violated was so clearly established that a reasonable" employee would be aware of the illegality of their conduct. Carey v. Nevada Gaming Control Board, 279 F.3d 873, 879 (9th Cir. 2002). Plaintiff offers no analysis to rebut Defendants' argument that the individual claims should be dismissed. (See Dkt. No. 35 at 8-10; Dkt. No. 47-2 at 26.) Plaintiff simply cites to caselaw describing the general § 1983 "under the color of state law" standard. (Dkt. No. 47-2 at 26.) In other words, Plaintiff does not describe with any specificity the specific acts committed by specific individuals that give rise to § 1983 liability or the nature of the underlying violation. (Id.)

Plaintiff's failure to either describe the basis for the individual § 1983 claims or to respond Defendants' arguments related to qualified immunity is detrimental to her claims.

IV. Punitive Damages

Punitive damages are available in § 1983 claims only where there is "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." Smith v. Wade, 461 U.S. 30, 51 (1983). Plaintiff's argues that, if she proves her retaliation claim, "it will imply that Defendants are lying to cover up intentional violations of civil rights." (Dkt. No. 47-2 at 28.) Because the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1983 claim, it need not reach the question of whether punitive damages are appropriate.

V. Retaliation in violation of Title IX

Plaintiff's Title IX claim against the District also fails as a matter of law. While Title VII and Title IX are by no means coterminous, the Court's retaliation analysis is the same under either provision. See Fitzgerald v. Barnstable Sch. Comm., 129 S.Ct. 788, 797 (2009) (observing the "divergent coverage of Title IX and the Equal Protection Clause"); see also Burch v. Regents of the Univ. of California, 433 F. Supp. 2d 1110, 1125 (E.D. Cal. 2006) (noting that the standards for a Title VII claim for retaliation are identical to those under Title IX). Plaintiff does not allege any speech or retaliatory acts for the purposes of her Title IX claim that differ from her Title VII claim. As the Court analyzed, Plaintiff offers no evidence suggesting a causal link between her complaints of gender bias to her termination as head coach. The District is entitled to summary judgment on Plaintiff's Title IX retaliation claim.

VI. RCW 49.60

Plaintiff's complaint alleges a state law claim for discrimination, retaliation, and a hostile work environment. (Compl. ¶¶ 7.1-7.6.) Plaintiff agrees her state law discrimination and retaliation claims rise and fall with her federal claims. (Dkt. No. 47-2 at 27.) A hostile work environment claim requires Solkey to demonstrate "the harassment was (1) unwelcome, (2) because she is a member of a protected class, (3) affected the terms or conditions of employment, and (4) imputable to the employer." Domingo v. Boeing Employees' Credit Union, 124 Wn. App. 71, 84 (2004). Plaintiff does not respond to the substance of Defendants' arguments; rather, she asserts that the District may be liable under a theory of aiding and abetting. (Dkt. No. 47-2 at 27.) However, there is no evidence that any of individuals encouraged or incited each other to act. Defendants are thus entitled to summary judgment on all RCW 49.60 claims.

ORDER ON MOTION FOR SUMMARY
JUDGMENT- 15

VII. Wrongful Termination in Violation of Public Policy

A claim of wrongful termination in violation of public policy requires a plaintiff to demonstrate: (1) "the existence of a clear public policy (the clarity element)," (2) "the conduct in which they engaged would jeopardize the public policy (the jeopardy element)," (3) a causal link between the conduct and the dismissal. Gardner v. Loomis Armored Inc., 128 Wn.2d 931, 941 (1996) (further noting that defendant "must not be able to offer an overriding justification" for the dismissal).

Solkey identifies RCW § 28A.640 as a clear public policy at issue in her termination. The section Plaintiff cites merely refers to civil remedies for violations of RCW § 28A.610, which prohibits inequality in the educational opportunities offered to girls in public schools. Plaintiff also identifies the policy against improper renumerative conduct. WAC 181-87-090. With respect to the decision to replace Solkey with Abrahamson, only the first policy applies because Plaintiff has put forth no evidence she complained about Lathan's conflict of interest until after she lost her coaching position. (See Solkey Decl., Ex. K.) Plaintiff offers no evidence indicating a causal link between her complaints about gender inequity and the decision to hire Abrahamson. Moreover, Plaintiff offers no evidence indicating she was constructively discharged from Sequoyah by virtue of her classroom assignments. (See Dkt. No. 35 at 21.) In fact, the record indicates Solkey sought teaching positions outside Sequoyah and the District before she learned of the classroom assignments. (Elmer Decl. ¶ 16.) Defendants are thus entitled to summary judgment on Plaintiff's wrongful termination claim.

## Conclusion

Viewing the facts in a light most favorable to the non-movant, Plaintiff has failed to create a material issue of fact with respect to any of her claims. Defendants' motion (Dkt. No. 35) is hereby GRANTED and Plaintiff's complaint is dismissed. Judgment shall be entered in favor of Defendants. The Court FINDS AS MOOT the parties' stipulation (Dkt. No. 84) related to the deadline for submission of motions in limine.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

Dated this 26th day of May, 2009.

Marsha J. Pechman
United States District Judge